**FILED**
**Jul 02, 2026**
**01:42 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT CHATTANOOGA

| | |
|---|---|
| **Crystal L. Evans,**<br>                **Employee**,<br>**v.**<br>**Schnellecke Logistics USA, LLC,**<br>                **Employer**,<br>**And**<br>**Great American Insurance Group,**<br>                **Carrier**. | **Docket No. 2026-10-0780**<br><br><br>**State File No. 82584-2025**<br><br><br>**Judge Audrey Headrick** |

## EXPEDITED HEARING ORDER

Ms. Evans asked that Schnellecke pay for unauthorized medical treatment and temporary disability benefits after her termination. Schnellecke denied her request, asserting that it authorized treatment and terminated her for cause. For the reasons below, the Court holds Ms. Evans is not entitled to the requested benefits at this time.

## Claim History

On November 20, 2025, Ms. Evans injured her back and right leg from tripping over an electrical cord. After her injury, Schnellecke authorized treatment with *five* panel-selected physicians.

First, Ms. Evans sought authorized care at a walk-in clinic, where she received a steroid injection, prescription, and work restrictions. Days later, Ms. Evans returned to the clinic, and the doctor referred her to an orthopedist.

Before seeing an orthopedist, Ms. Evans stated she went to the emergency room because of her "severely swollen leg." She did not submit that record.

In December, Ms. Evans saw her second authorized physician, orthopedist Dr. Benjamin Miller, for her knee. He ordered an MRI and kept Ms. Evans on restricted

1

duty until her evaluation by a spine specialist.

In early January, Ms. Evans returned to the emergency room the night before her scheduled appointment with Dr. Michael Calfee, spine orthopedist, and the third authorized physician. She did not introduce that record.

Ms. Evans saw Dr. Calfee the day after her emergency room visit, and he concluded that her work injury caused radiculopathy. He ordered physical therapy and an EMG/NCS, kept her on restricted duty, and referred her to a spine surgeon.

Ms. Evans sought emergency treatment again before her next appointment with Dr. Calfee after experiencing incontinence. She underwent another lumber MRI, which showed a new central disc extrusion at L4-5 when compared to her older MRIs. Ms. Evans returned to Dr. Calfee and reported seeking emergency treatment for incontinence, but he did not think her lumbar condition caused it. He also noted her EMG/NCS revealed normal findings. Dr. Calfee kept her on restricted duty, released her to return as needed, and referred her to a spine specialist.

In February, Ms. Evans saw Dr. Benjamin Weisenthal, the fourth authorized doctor and a spine surgeon. Dr. Weisenthal reviewed her 2023 and 2025 lumbar MRIs and concluded she had a small central disc bulge at L4-5 without significant stenosis. He also said her low-back and right-leg pain did not match her clinical symptoms. Dr. Weisenthal ordered an injection and released her without restrictions. He said he had nothing else to offer. Dr. Weisenthal later placed Ms. Evans at maximum medical improvement and did not anticipate the need for future treatment.

In March, Ms. Evans's primary care physician ordered a knee MRI, which showed a strained calf muscle.

In April, Ms. Evans saw the fifth authorized physician, Dr. Charles Benson, another orthopedic surgeon, for a second opinion on her knee. Dr. Benson diagnosed right-knee internal derangement and quadriceps muscle strain, ordered crutches and physical therapy, and requested images of her previous knee MRI.

The records do not show whether Ms. Evans returned to see Dr. Benson. However, on May 22, Dr. Benson placed Ms. Evans at maximum medical improvement, noting he did not anticipate the need for future treatment.

Schnellecke terminated Ms. Evans three months after her work injury for

2

violating its attendance policy. Shayna Kunselman, Human Resources Manager, testified Ms. Evans received policy training in August 2025. Most of Ms. Evans's attendance problems involved clocking in late. Ms. Kunselman stated that Ms. Evans received a "counseling" warning, a written warning, and a final warning before it terminated her. She stated that Schnellecke also documented performance problems. Moreover, Chantelle Meess, Safety Manager, testified by affidavit that Schnellecke accommodated Ms. Evans's work restrictions until her termination.

Ms. Evans argued that Schnellecke delayed and denied her medical care, which forced her to treat on her own. She continues treating on her own because she remains in pain, and she plans to see a neurosurgeon in July.

Schnellecke acknowledged denying the treatment Ms. Evans sought on her own during the same time she was receiving authorized care. Schnellecke argued it terminated Ms. Evans for violation of its attendance policy.

### Findings of Fact and Conclusions of Law

Ms. Evans must prove a likelihood of prevailing at a hearing on the merits that she is entitled to the requested benefits. Tenn. Code Ann. § 50-6-239(c)(6) (2025); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

First, the Court considers Ms. Evans's request for payment of unauthorized treatment. An employer may risk being required to pay for unauthorized treatment if it does not offer the treatment made reasonably necessary by the work injury as required by subsection 50-6-204(a)(1)(A). *Young v. Young Elec. Co.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 24, at *16 (May 25, 2016).

Here, Schnellecke offered Ms. Evans five panels and never denied any authorized medical treatment. The records do not show any delays. Ms. Evans sought emergency care multiple times, and she also treated with her primary care physician while simultaneously receiving authorized treatment. She did not submit the medical records or bills. Likewise, Ms. Evans did not offer any expert opinion that the treatment she obtained was related to work, reasonable and necessary, or that the charges were usual and customary. Tenn. Code Ann. § 50-6-102(12); *Eaves v. Ametek, Inc.,* 2018 TN Wrk. Comp. App. Bd. LEXIS 53, at *8 (Sept. 14, 2018). Therefore, the Court finds that Ms. Evans is unlikely to prevail at a hearing on the merits in her request for payment of unauthorized medical treatment.

3

Next, Ms. Evans asked for temporary partial disability benefits. Temporary partial disability refers to the time during which an injured employee can resume some gainful employment but has not reached maximum recovery. *Jones v. Crencor Leasing and Sales*, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015).

Schnellecke relied on *Marvin Windows of Tennessee v. Gardner*, No. WC2011-01479-WC-R3-WC, 2012 Tenn. LEXIS 403, at *9 (Tenn. Workers' Comp. Panel June 8, 2012), arguing that an employer can still enforce workplace rules even though an employee is due temporary disability benefits. So, a termination due to a violation of workplace rules may relieve an employer of its obligation to furnish temporary disability benefits if the termination was related to the workplace violation. To be related, the Court must find "(1) that the actions allegedly precipitating the employee's dismissal qualified as misconduct under established or ordinary workplace rules and/or expectations; and (2) that those actions were, as a factual matter, the true motivation for the dismissal." *Id*. at *9-10.

Schnellecke offered proof showing it terminated Ms. Evans for violation of its attendance policy, including its written policy, Ms. Evans's clock-in and -out times, and write-ups leading up to her termination. Likewise, Schnellecke confirmed it accommodated Ms. Evans's restrictions until her termination. Ms. Evans did not rebut this proof.

Schnellecke's actions were reasonable, and its decision to terminate Ms. Evans constituted a valid termination for cause. Therefore, the Court finds that Ms. Evans is unlikely to prevail at a hearing on the merits in her request for temporary disability benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. The Court denies Ms. Evans's request for benefits at this time.

2. This case is set for a Scheduling Hearing on **Monday, August 31, 2026, at 10:00 a.m. Eastern Time**. The parties must call (423) 634-0164 or (855) 383-0001. Failure to call may result in a determination of the issues without the party's participation.

4

**ENTERED July 2, 2026.**

_Audrey A. Headrick_
_____
**AUDREY A. HEADRICK**
**Court of Workers' Compensation Claims**

# APPENDIX

Exhibits:

1. Affidavit of Ms. Evans
2. Cumulative exhibit:
   - Employee Witness Report
   - Drug and Alcohol Consent Form
   - Safety/Quality Alert
   - Two photographs taken by Ms. Evans
   - Separation Notice dated January 30, 2026
3. MRIs filed by Ms. Evans
4. Physicans Care records
5. Erlanger Excuses
6. Order of Dr. Charles Benson for crutches
7. Cumulative exhibit:
   - First Report of Work Injury
   - Separation Notice dated 2/5/2026
   - Schnellecke Site Standard Attendance Policy
   - Paylocity Attendance Report
   - Corrective Discipline Form dated 1/27/2026
   - Corrective Discipline Form dated 10/21/2025
   - Corrective Discipline Form dated 11/17/2025
   - Affidavit of Chantell Meess, Safety Manager at Schnellecke
8. Cumulative exhibit:
   - Physicians Care medical records
   - Dr. Miller's medical records
   - Prime Imaging report dated 12/30/2025
   - Dr. Calfee's medical records
   - Bradley Neurology EMG/NCS dated 1/8/2026
   - Dr. Weisenthal's records
   - Dr. John Blake Lumbar ESI dated 3/24/2026
   - Dr. Benson's records
   - Benchmark Physical Therapy

## CERTIFICATE OF SERVICE

I certify that a copy of this order was sent as shown on July 2, 2026.

| Name | Email | Service sent to: |
|---|---|---|
| Crystal Evans, Employee | X | ███████████████ |
| Andrew Hebar, Dayna Glidden, Employer's Attorneys | X | ahebar@MorganAkins.com dglidden@morganakins.com |

_____
**PENNY SHRUM, COURT CLERK**
**wc.courtclerk@tn.gov**

7



<u>Right to Appeal:</u>

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board.  To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
   - ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
   - ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.

   When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal.  If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee.  If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk.  The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted.  For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

   **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable.  See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies). Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____      ☐ Motion Order filed on _____

☐ Compensation Order filed on_____      ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____

*[Signature of appellant or attorney for appellant]*



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____

2. Address: _____

3. Telephone Number: _____

4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning | _____ |
| SSI | $ _____ per month | beginning | _____ |
| Retirement | $ _____ per month | beginning | _____ |
| Disability | $ _____ per month | beginning | _____ |
| Unemployment | $ _____ per month | beginning | _____ |
| Worker's Comp. | $ _____ per month | beginning | _____ |
| Other | $ _____ per month | beginning | _____ |

LB-1108 (REV 11/15)                                                                                   RDA 11082

9. My expenses are:

Rent/House Payment $ _____ per month     Medical/Dental   $ _____ per month

Groceries       $ _____ per month     Telephone      $ _____ per month

Electricity       $ _____ per month     School Supplies $ _____ per month

Water          $ _____ per month     Clothing        $ _____ per month

Gas            $ _____ per month     Child Care      $ _____ per month

Transportation $ _____ per month     Child Support   $ _____ per month

Car            $_____ per month

Other          $ _____ per month (describe: _____ )

10. Assets:

Automobile           $ _____        (FMV) _____

Checking/Savings Acct. $ _____

House              $ _____        (FMV) _____

Other             $ _____        Describe:_____

11. My debts are:

| Amount Owed | To Whom |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT


Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.


_____
NOTARY PUBLIC

My Commission Expires:_____